UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| EDWARD THOMAS, ET AL. | CIVIL ACTION NO. 10-745 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LUKE MCNABB, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is Plaintiffs' Motion in Limine to Exclude Expert Testimony under Daubert (Record Document 67). Plaintiffs move to exclude certain portions of the opinion testimony of Dr. Kenneth Salyer ("Dr. Salyer"), namely those portions they claim are beyond his tendered field of expertise and beyond his medical treatment of Edward Thomas for fibrous dysplasia. See id. Additionally, Plaintiffs argue that Dr. Salyer's testimony as to medical causation, based on his interpretation of Dr. Ramos' and Dr. Zaffater's statements, must be excluded. See id. Defendants have opposed the motion, arguing that Plaintiffs' present objections are inconsistent with the Court's ruling at a January 25, 2012 status conference, have been waived, and are totally unfounded. See Record Document 82. For the reasons which follow, the Motion in Limine to Exclude Expert Testimony under Daubert is **DENIED**.

The scope of Dr. Salyer's testimony has been the subject of previous motion practice in this Court. On January 25, 2012, Magistrate Judge Hornsby held a status conference to discuss issues surrounding Dr. Salyer's trial testimony. Magistrate Judge Hornsby ruled:

> It is a close call, but the better exercise of discretion is to permit Dr. Salyer to review the CT scan and ***draw whatever conclusions, if any, he can from it about causation***.

Record Document 65 at 3 (emphasis added). Magistrate Judge Hornsby further ordered that the CT scan be delivered to counsel for Defendants by noon on January 26, 2012 and that the parties proceed with the trial deposition of Dr. Salyer. See id. Dr. Salyer's trial deposition took place on February 3, 2012 and the instant motion was filed on February 7, 2012.

First, the Court finds Plaintiffs' argument to exclude the opinion testimony of Dr. Salyer "that is beyond his tendered field of expertise and that is beyond his treatment of Edward Thomas for fibrous dysplasia" to be unconvincing. The record from the January 25, 2012 status conference evidences that all parties knew Dr. Salyer would opine as to medical causation. See Record Document 65 at 3. As noted previously, Magistrate Judge Hornsby permitted Dr. Salyer to review the CT scan "and draw whatever conclusions, if any, he can from it about causation." Id. Magistrate Judge Hornsby further noted in the Minutes that Dr. Salyer's review of the CT scan was "important to the issue of medical causation." Id.

Additionally, Dr. Salyer is qualified and competent to testify about medical causation in this matter. During his trial deposition, Dr. Salyer stated that the graduated from medical school at the University of Kansas. See Record Document 82, Exhibit 1 at 6. He did postgraduate training and a five year residency in general surgery at Parkland Memorial Hospital in Dallas, Texas. See id. He then returned to the University of Kansas for a two year residency in plastic and reconstructive surgery. See id. He is board certified in both general surgery and plastic and reconstructive surgery. See id. Dr. Salyer has forty years of experience in performing intracranial surgery and has pioneered the development of the sub-specialty of craniofacial surgery. See id. at 6-7. Moreover, Dr. Salyer began treating

Edward Thomas in 1994 and performed five surgeries on him. See id. at 10, 13. During the course of treatment, Dr. Salyer stated that he and his team, prior to performing any surgeries, would have done an extension workup to see if there may have been anything else causing any vision problems. See id. at 58-59.

The Court further notes that Dr. Salyer has not treated Edward Thomas since 1996; thus, Dr. Salyer's testimony regarding Edward Thomas's December 2011 CT scan is not part of ongoing treatment for fibrous dysplasia. In fact, it appears that the December 2011 CT scan was obtained by Plaintiffs for litigation, not treatment, purposes. Dr. Salyer was first deposed on November 28, 2011 and opined that Edward Thomas's loss of vision was due to a progression of fibrous dysplasia rather than the motor vehicle collision. See Record Document 65 at 1, citing Deposition of Dr. Salyer (Record Document 59-1 at 27). Dr. Salyer added:

> It can be scientifically proven with a special CAT scan, CT scan which includes the orbits and optic nerve. This will tell us the answer and let us know whether this man indeed needs immediate treatment so that he won't go blind in that eye.

Id., citing Deposition of Dr. Salyer (Record Document 59-1 at 28). The CT scan that was performed in December 2011 was, in fact, not the type of CT scan recommended by Dr. Salyer. See Record Document 82 at 7 n. 5. Dr. Salyer testified that the new CT scan was nonetheless sufficient for him to determine that there did not appear to be any evidence that the fibrous dysplasia was causing Edward Thomas's vision problems; however, because of the type of CT scan performed, he was unable to rule out many other possible causes of Edward Thomas's vision problems. See id., Exhibit 1 at 43-45. Such testimony is relevant and admissible given that the CT scan was done at the behest of Plaintiffs, yet

they failed to obtain the type of CT scan which Dr. Salyer had requested.

Finally, the Court concludes that Plaintiffs' contention relating to Dr. Salyer's "interpretation of Dr. Ramos' and Dr. Zaffater's statements" is also without merit. Record Document 67-1 at 7-9. Plaintiffs argue that Dr. Salyer's testimony is based on factual assumptions not supported by evidence. The Court's review of this issue reveals that Dr. Salyer is not interpreting the statements of Dr. Ramos, a neurosurgeon, or Dr. Zaffater, an ophthalmologist. Rather, as stated by Defendants, "[Dr. Slayer] is merely relying upon the medical history reported by Edward Thomas to other physicians" in reaching an opinion as to medical causation. Record Document 82 at 16. Such practice appears to be common and nothing presented in Plaintiffs' motion or reply convinces the Court otherwise.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion in Limine to Exclude Expert Testimony under Daubert (Record Document 67) be and is hereby **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 7th day of March, 2012.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE